# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SHULAR CONTRACTING, INC., and<br>MICHAEL L. SHULAR | §<br>§<br>§ | PLAINTIFFS/COUNTER DEFENDANTS |
| V. | §<br>§ | CAUSE NO. 1:09cv206-LG-RHW |
| BAYOU CONCRETE, LLC | § | DEFENDANT/COUNTERCLAIMANT |

### MEMORANDUM OPINION AND ORDER DENYING FIRST MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART SECOND MOTION FOR SUMMARY JUDGMENT, AND DENYING MOTIONS TO STRIKE

BEFORE THE COURT are Defendant Bayou[1] Concrete, LLC's Motion for Summary Judgment [39], Motion for Summary Judgment on Counterclaim [41], Motion to Strike John Simmons' Affidavit [55], Motion to Strike Affidavit of Michael Allen Estep, Jr. [56], and Motion to Strike Phil Loeffler's Affidavit [57]. Plaintiffs Shular Contracting, Inc., and Michael L. Shular initiated this negligence action against Bayou for defective concrete manufacture. Bayou filed a breach of contract counterclaim against Shular Contracting for nonpayment of subsequently delivered concrete. Bayou argues it is entitled to summary judgment on the Complaint because (1) the economic loss doctrine bars this suit, and (2) there is no evidence of causation or (3) damages. Bayou argues it is entitled to summary judgment on the Counterclaim against Shular Contracting, because (4) it breached the contract for sale of concrete and (5) Shular Contracting is not entitled to a set off nor (6) recoupment. Bayou further argues that Simmons, Estep, and Loeffler's affidavits are inadmissible on summary judgment. The Court has considered the parties' submissions and the relevant legal authority. Summary judgment is

---

[1] Identified in the Complaint as "Gulf Concrete, LLC, as successor by merger with Bayou Concrete, Inc.," Defendant's name is now Bayou Concrete, LLC. Because some of the events took place prior to the name change, Defendant appears alternatively in the record as Gulf and as Bayou Concrete, LLC.

granted on the Counterclaim against Shular Contracting in the amount of $85,978.11. Shular Contracting is not entitled to a set off nor recoupment. The remainder of the motions are denied.

## FACTS AND PROCEDURAL HISTORY

Shular Contracting is a Tennessee corporation, with its principal place of business there. Mr. Shular is a Tennessee resident who serves as the President and Director of Shular Contracting. He also owns the Holiday Inn on Highway 49 in Gulfport, Mississippi. He contracted with Shular Contracting to build the hotel. Shular Contracting subcontracted with Keith Waits Construction Company to perform the concrete work. The subcontractor purchased the concrete from Bayou. Also located in Gulfport, Bayou manufactures and delivers concrete. Bayou's two members are Mississippi domiciliaries.

Bayou allegedly manufactured and delivered defective concrete to the project. Specifically, the concrete had too much air in the mixture, which caused the concrete to be weaker than required and designed to be. This fact was not discovered until after it was poured by the subcontractor. Once this was discovered, the subcontractor and Shular Contracting ripped up the defective concrete. Subsequently, Bayou would not sell any more concrete to the subcontractor. Bayou and Shular Contracting then entered into an agreement for the purchase of additional concrete to complete the project.

## DISCUSSION

<u>Motions for Summary Judgment</u>

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the nonmoving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### I. COMPLAINT

Bayou argues that Plaintiffs' suit is barred by the economic loss doctrine. In the alternative, Bayou argues there is no evidence of damages. Plaintiffs respond this is a negligence action to which the economic loss doctrine does not apply and their damages are not for the commercial damage to the concrete itself. Plaintiffs contend there is evidence this negligence caused them damages.

#### A. ECONOMIC LOSS DOCTRINE

First, Bayou argues that economic loss doctrine bars the suit whether it is construed as a products liability case or a negligence case, because the defective concrete only damaged itself. Plaintiffs maintain that the doctrine does not apply to a negligence case and the concrete caused other property damage.

Mississippi applies the economic loss doctrine to negligence cases. *State Farm Mut.*

3

*Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 387 (¶10) (Miss. Ct. App. 1999). This doctrine prohibits "recovery in strict liability or negligence," "for damage to the product itself." *Id.* at (¶¶11-12). In other words, pure economic loss is "damages caused by the product that adversely affect the product's monetary value." *Id.* at 388 (¶14). For example, in *State Farm*, the Mississippi Court of Appeals examined whether a defective car caused damage only to itself or not. *Id.* at (¶15). State Farm argued that the defective product was a leaky oil seal and it did not just damage itself but it caused the car to catch on fire. *Id.* Thus, State Farm argued that the car was "other property" that was damaged by the defective oil seal. *Id.* The court rejected this argument, finding that the defective oil seal was "an integral component of a car" and "[c]omponent parts are not 'other property.'" *Id.* Therefore the court held the defective car (defective because of the leaky oil seal) caused injury only to the car itself, so the economic loss doctrine barred the negligence action. *Id.* at (¶16).

In the instant action, there is evidence that the damages extend beyond just the defective concrete itself. The concrete was defective because it had too much air and this caused the concrete to be too weak. Bayou delivered the defective concrete. The subcontractor poured the concrete into the grade beams and pile caps and on top of plumbing and electrical components. Rebar was set into the concrete. Because the concrete was too weak, Shular Contracting had to have it removed. There is evidence that this caused damages to, among other things, the rebar, plumbing, and electrical components, which were rendered useless and had to be destroyed. Bayou's expert Howard Foreman testified that twenty-one P-2 pile caps and two P-5 pile caps had to be destroyed and rebuilt because of the defective concrete. Bayou's other expert John Oropesa opined that the work and costs caused by the removal and replacement of the defective

4

concrete totaled $154,799. It is undisputed that additional labor and costs had to be expended to rip up the defective concrete and replace the fill, plumbing, rebar, electrical components, pile caps, and concrete. What is disputed is the amount. There is evidence that this in turn delayed the opening of Mr. Shular's hotel, causing him to lose profits. Because there is evidence that the defective concrete damaged other property and persons, Bayou is not entitled to summary judgment under the economic loss doctrine.

### B. SHULAR CONTRACTING'S DAMAGES

Bayou next argues that Shular Contracting will not be able to prove its damages because Loeffler's testimony is inadmissible. Specifically, Bayou argues that he was the only one identified with knowledge of damages, he was not designated as an expert, and his testimony is not based on his personal knowledge. Plaintiffs respond that he has personal knowledge and that other witnesses likewise testified about damages.

The Court need not consider whether Loeffler's testimony is admissible, because he was not the only witness disclosed with knowledge about Shular Contracting's damages. For example, Shular Contracting's President and Director Mr. Shular and project superintendent Simmons also testified about damages. Both Mr. Shular and Loeffler identified Chief Financial Officer Estep's familiarity with and roles in calculating damages. Simmons testified that Bayou's own Greg Pietrangelo performed calculations on the amount of bad concrete that had to be removed.

Additionally, as set forth above, Bayou's experts agreed that there were extra demolition and repair costs because of the defective concrete. Therefore, there is a genuine dispute of fact as to Shular Contracting's damages.

5

### C. MR. SHULAR'S DAMAGES

Bayou finally argues that Mr. Shular will not be able to prove that the defective concrete caused a delay in opening his hotel because he has no expert testimony and Simmons testified the hotel was complete in October 2008.

First, Bayou offers no authority that would require that this particular causation evidence be presented by expert testimony. In fact, Bayou admits that expert testimony is not *per se* required. The Court finds that expert testimony is not required to show that defective concrete caused a delay.

Bayou also takes issue with how long the delay actually was. It is undisputed that Mr. Shular and Shular Contracting agreed to complete the hotel by September 21, 2008. Bayou points to Simmons's testimony as evidence that the hotel was completed one month later, as opposed to seventy-two days later. However, Loeffler testified that it was completed in December of 2008. It is undisputed that because of the defective concrete, unscheduled work (demolition and repair) had to occur. Oropesa opined that this extra work should have taken one month. Regardless of how long the delay was, there is evidence that the defective concrete caused a delay in the opening of the hotel. Both sides agree that any lost profit would be calculated at $3,611 per day that the hotel was delayed. Therefore, because there is evidence that Mr. Shular was damaged, Bayou is not entitled to summary dismissal of his claim.

### II. COUNTERCLAIM

Bayou argues that it is entitled to summary judgment on the Counterclaim against Shular Contracting because it breached the contract by not paying for concrete. Accordingly, Bayou argues that Shular Contracting owes Bayou $85,978.11 in principal, and 18 per cent interest per

annum, and $111,572.73 in attorney's fees. Bayou further argues that Shular Contracting is not entitled to set off nor a recoupment.

### A. BREACH OF CONTRACT

Because Bayou bears the burden of proving breach of contract, Bayou "must establish 'beyond all peradventure all of the essential elements of the claim.'" *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). To prove breach of contract, Bayou must prove by a preponderance of the evidence (1) the existence of a valid and enforceable contract between itself and Shular Contracting, (2) that it breached the contract, and (3) the breach caused Bayou to suffer monetary damages. *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992). Shular Contracting agrees that it had a contract with Bayou for the sale of concrete and that Shular Contracting owes $85,978.11 pursuant to this contract. Shular Contracting argues that the agreement included a right to discount this amount by that owed by Bayou for the damages caused by the defective concrete.

Because the parties agree that at least $85,978.11 is owed under the contract, Bayou is entitled to summary judgment in this amount. The Court will now consider whether Bayou is entitled to summary judgment on the interest and attorney's fees.

Bayou argues that 18 per cent interest is due under the contract. The Court finds that Bayou has not demonstrated it is entitled to judgment as a matter of law for this amount. Bayou points to paragraph one of this document as the source of Bayou's entitlement to 18 per cent interest:

> [Shular Contracting] requests that [Bayou] Concrete, LLC . . . extend credit to
> [Shular Contracting] for purchases of materials by [it] as may be approved by
> [Bayou], upon the following terms and conditions:

7

1. Each purchase of materials made by [Shular Contracting] shall constitute a portion of an [account] to which [Bayou] may charge (a) the cash selling price of each item so purchased, and (b) *a FINANCE CHARGE of the lesser of 1 ½ % per month or the highest rate allowed by law on that portion of the unpaid balance which, as of the date of each statement of the account, is more than thirty days old*. . . . [Shular Contracting] agrees to pay [Bayou] the balance of [Shular Contracting]'s account, including any finance charges added thereto as herein provided, in accordance with [Bayou]'s credit policy in effect from time to time. At the time of payment, [Shular Contracting] shall have the right to designate, in writing, the particular invoice or finance charges to which such payment is to be credited. . . .

(Def.'s 2d Mot. Summ. J. Ex. 12 at 2) (emphasis added). In other words, the interest rate may be one and a half per cent per month or it may not be. Bayou has not addressed whether one and a half per cent per month (which equals 18 per cent per year) is less than the highest amount of interest allowed by law. Therefore, Bayou has not established beyond all peradventure that Bayou is entitled to 18 percent interest.

As for attorney's fees, the Credit Application provides:

2. Upon default in payment of any charges on [Shular Contracting]'s account more than thirty days old, the entire unpaid balance of [Shular Contracting]'s account shall, at [Bayou]'s option, WITHOUT NOTICE OR DEMAND, become immediately due and payable. Subject to any limitations imposed by applicable law, after default, should the amount owing on the account be referred to an attorney . . . for collection, [Shular Contracting] agrees to pay a reasonable attorney's fee . . . and all costs and other expenses which may be incurred by [Bayou]. . . .

3. [Shular Contracting] agrees (a) that [Bayou]'s waiver of or acquiescence in any default shall not constitute waiver of any subsequent or other default. . . .

7. This Open End Credit Plan, together with [Bayou]'s invoices and delivery tickets, constitutes the entire agreement between [Bayou] and [Shular Contracting] with respect to the sale of products and extension of credit, all prior agreement, [sic] representations and understandings between the parties having been merged into such documents.

*Id.* at 3. In other words, unless the default is waived, Bayou is entitled to recover the reasonable amount of attorney's fees Bayou incurs because of its collection efforts.

The parties dispute whether the attorney's fees were incurred because of the collection of the $86,000. Shular Contracting argues that the attorney's fees on the Counterclaim are not severable from those incurred on the Complaint. Bayou does not present any evidence that the attorney's fees were incurred by Bayou at all, nor incurred solely on the Counterclaim as opposed to the Complaint. Bayou only presents an affidavit from one of its attorneys in this case that the attorney's fees are reasonable. Because Bayou failed to meet its burden of proof on this issue, Bayou is not entitled to summary judgment on attorneys' fees.

In a sum, SHULAR Contracting is liable to Bayou for breach of a contract in the amount of at least $85,978.11. Whether any interest or attorney fees are also owed remains an issue for trial. The Court will now consider whether Shular Contracting is entitled to set off or recoup this amount.

### B. SET OFF

Bayou argues that Shular Contracting is not entitled to set off the amount owed under the contract, because the amount Bayou owes for the defective concrete is unliquidated. Shular Contracting responds that the amount Bayou owes to Shular Contracting is liquidated.

Set off is an affirmative defense which not only allows a defendant credit against a claim but allows the defendant to recover from plaintiff if it turns out that the set off is greater than the claim. *Myers v. Estell*, 47 Miss. 4, 17 (Miss. 1872). If the defendant's set off claim is greater than plaintiff's claim, then the set off claim becomes the real cause of action. *Id.*

"[U]nliquidated damages are not the subject of set-off." *Id.* Liquidated damages are set

9

or determined by a contract. *Sports Page, Inc. v. Punzo*, 900 So. 2d 1193, 1206 (¶57) (Miss. Ct. App. 2005). Unliquidated damages are those that "have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury." *Id.* at 1206-07 (¶57). Where there is a legitimate dispute as whether an amount is owed, and if so, how much, then that amount is unliquidated. *Id.* at 1207 (¶58). Here, Shular Contracting alleges that it was damaged by Bayou's negligent manufacture of concrete. As shown in the above discussion regarding damages, there is a genuine dispute as to the amount of tort damages for which Bayou may be liable. Prior to a jury verdict in this case, this amount remains uncertain. Therefore, as a matter of law, Shular Contracting is not entitled to the affirmative defense of set off. The Court makes no judgment as to whether Shular Contracting may recover on its negligence claim.

### C. RECOUPMENT

Bayou finally argues that Shular Contracting is not entitled to recoup the amount owed for the defective concrete from the amount awarded on the Counterclaim because the defective concrete is a separate transaction from Shular Contracting's breach of a subsequent contract. Shular Contracting responds that the contract arose out of the same transaction because it was induced by Bayou's promise to pay for the defective concrete. In other words, Shular Contracting claims that part of the contract was an agreement that Bayou would deduct the damages it owed for the defective concrete sold to the subcontractor from the price of any concrete sold to Shular Contracting.

Recoupment is a different affirmative defense from set off. *Myers*, 47 Miss. at 17. Although it also allows the defendant a credit against a plaintiff's claim, the credit can never

exceed plaintiff's claim. *Id.* The basis for recoupment "must grow out of the same transaction, and proceed from the same subject matter as the plaintiff's right of action." *Id.*

*Myers* held that recoupment was allowed for the purchaser of land who was being sued for the price of the land. *Id.* at 21. The purchaser was allowed to plead as recoupment his claim that the seller fraudulently induced him to purchase the land with misrepresentations as to whether the land flooded. *Id.*

Mississippi also allows a buyer to claim recoupment for a defective product or breach of warranty when the seller sues the buyer for the purchase price of that product. *Criss v. Bailey*, 137 So. 2d 160, 162 (Miss. 1962); *Neely v. Allis-Chalmers Mfg. Co.*, 165 So. 114, 115 (Miss. 1936). For example, in *Neely*, the seller brought suit against Neely:

> upon an open account . . . consisting of many items, and it was agreed, at the trial, that they were proper charges, but it was contended that same was not due because certain parts had been exchanged for new parts on account of defects, and certain other parts did not fill the purpose for which they were bought and had to be repaired by a mechanic at great expense.

*Id.* at 114. Specifically, Neely had bought tractors from defendant, some with defective parts which he had to exchange and others he had to have repaired. *Id.* at 115. The trial court excluded Neely's evidence of the defects and resulting damages. *Id.* The Mississippi Supreme Court reversed, holding that Neely's defects and breach of warranty defense "grew out of the same transaction . . . the same demand sued on. In the case at bar the demand sued on is the foundation of the plea of recoupment." *Id.*

In *Criss*, the court held that in a suit for the purchase price of a washing machine, the buyer was allowed recoupment based on the defective condition of that washing machine. *Criss*, 137 So. 2d at 162. The court explained:

> Recoupment, at common law, is the right of the defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues, or because he has violated some duty which the law has imposed on him in the making or performance of that contract.

*Id.* The buyer was therefore entitled to show that the contract included an express warranty on the washing machine and that warranty was breached. *Id.*

What these cases have in common is that the basis for the plea of recoupment is itself a defense to the contract. In such a case, it is considered to be part of the same transaction as the breach of contract claim.

When the basis for recoupment is not a defense to the breach of contract claim, it does not grow out of the same transaction. For example, slander and threats committed in trying to collect a debt is not a defense to the underlying debt itself. *Calhoun v. McNair*, 166 So. 330, 331 (Miss. 1936). Therefore, while the defendant may have a right of action against the plaintiff for slander, defendant may not use that slander as a basis for recoupment on the breach of contract claim. *Id.* In *Calhoun*, a holder of a promissory note sued to collect on the note. *Id.* at 331. In a prior attempt to collect on the note, the holder slandered defendants and pulled a knife on them and threatened to kill them for their failure to pay. *Id.* Defendants tried to plead this as a basis for recoupment against the collection action. *Id.* The court found that there was no recoupment available, because even though the slander and the breach of contract both involved the same promissory note, the slander "did not spring out of the plaintiff's cause of action." *Id.* This is because, it "is essential that the wrong of which the defendant complains should, in some way, impair the consideration of [the] contract." *Id.* "The language used did not affect, nor was it any part of the consideration of the original contract." *Id.*

Shular Contracting claims that the contract was induced by Bayou's promises to pay for the defective concrete and that there was an agreement to discount the sales price by Shular Contracting's damages. The parties agreed, according to Simmons, that Shular Contracting would keep up with its defective concrete damages and be given a discount in this amount on the contract sales price. On November 27, 2007, the parties entered into the contract which did not include this provision. The contract disclaimed any prior representations or agreements that were contrary to the Credit Application, future invoices and delivery tickets. Thus, any agreement that predated the contract was declared invalid. According to Simmons, the discount agreement predated the contract. Therefore, by operation of the merger clause, it was disclaimed. There is no competing evidence that the agreement postdated the contract. Further, there is no evidence that, after the agreement, Bayou waived collection of the sales price subject to a discounting for defective concrete or otherwise modified the agreement to include this promise to discount.

In the light most favorable to Shular Contracting, the evidence is that Bayou's promise to discount the sales price was the thing that induced Shular Contracting to enter the sales contract. There is no evidence, however, that this was fraudulent inducement or even negligent misrepresentation. Indeed, Simmons states that he and Pietrangelo were in agreement and it was not until later that Bayou reneged. Because the promise to discount does not serve as a defense to the contract, it is not a part of the same transaction or occurrence and so is not a basis for recoupment.

MOTIONS TO STRIKE

Bayou asks the Court not to consider Simmons, Estep, and Loeffler's affidavits in opposition to the motions for summary judgment. The Court did not consider the affidavits in

13

denying the first motion for summary judgment.  Although the Court did consider Simmons's January 4, 2010, affidavit in ruling upon the issue of recoupment in the second motion for summary judgment, that portion of the summary judgment motion was granted to Bayou.  Therefore, the motions to strike are moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant Bayou Concrete, LLC's Motion for Summary Judgment [39] should be and is hereby **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Bayou's Motion for Summary Judgment on Counterclaim [41] should be and is hereby **GRANTED** as to the breach of contract Counterclaim against Plaintiff Shular Contracting.  Bayou is entitled to at least $85,978.11 from Shular Contracting.  Shular Contracting is not entitled to a set off or recoupment.  The remainder is **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Bayou's Motion to Strike John Simmons' Affidavit [55] should be and is hereby **DENIED AS MOOT.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Bayou's Motion to Strike Affidavit of Michael Allen Estep, Jr. [56] should be and is hereby **DENIED AS MOOT.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Bayou's Motion to Strike Phil Loeffler's Affidavit [57] should be and is hereby **DENIED AS MOOT.**

**SO ORDERED AND ADJUDGED** this the 14th day of July, 2010.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE